[No. A039944. First Dist., Div. Five. Aug. 25, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY ANTHONY MACEDO et al., Defendants and Appellants.

**[Opinion certified for partial publication.†]**

---

†Parts II, III, IV and V do not merit publication as they do not meet the standards for publication contained in California Rules of Court, rule 976(b).

### COUNSEL

Richmond M. Flatland, under appointment by the Court of Appeal, and Douglas R. Schmidt for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Christopher J. Wei and Brenda P. Reyes, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

LOW, P. J.—We hold in this case that the trial court must instruct the jury on the intent necessary to convict a defendant as an aider and abettor to burglary. CALJIC No. 3.01, which defines aiding and abetting, is ambiguous when applied to the crime of burglary since it does not state that a putative aider and abettor may not be convicted solely on the basis of intent to assist the perpetrator after the burglary has occurred. Because of the ambiguity of CALJIC No. 3.01 in this context, a defendant charged as an aider and abettor to burglary is entitled to an instruction clarifying the appropriate definition of the crime. A defendant may not be convicted as an aider and abettor if he assisted the perpetrator only after the burglary has occurred.

Defendants Gary Anthony Macedo and Roderick McKenzie were convicted by jury trial of first degree burglary. (Pen. Code, §§ 459, 460, subd. 1.) We affirm McKenzie's conviction, but reverse the conviction of Macedo.

Ken Mellor observed two men in a white van driving slowly by his home. The van turned around in the nearby cul de sac and parked. The passenger

got out of the van and walked toward the residence while the driver pulled away from the curb and proceeded up the street. Mellor saw the passenger walk into the garage. Shortly thereafter, the passenger rode Mellor's 18-speed mountain bicycle out of the garage.

At that time, Mellor's daughter, Carey, arrived and saw the passenger riding Mellor's mountain bicycle down the street. Her father got her attention, jumped into Carey's car, and the two gave chase. The Mellors forced the driver of the van to pull over. Mr. Mellor detained the driver of the van, Gary Macedo, while Carey telephoned the police. While Mellor and Macedo waited for the police to arrive, the man who rode the bicycle kept calling "Gary" from some nearby bushes. The man disappeared before the police arrived, but both Mellor and Carey identified defendant McKenzie as the bicycle thief.

McKenzie presented an alibi defense, which his mother corroborated. Macedo's defense was that he did not know the passenger in his van intended to burglarize Mellor's garage. Macedo testified that the passenger in his van was Rich Sanders, not McKenzie. The two had planned to pick up McKenzie on the morning of July 19 to finalize a painting contract. On the way, Macedo noticed a house under construction, which he considered a potential painting job, about a block away from McKenzie's residence. Sanders asked Macedo to pull over. When Macedo asked why, Sanders told Macedo not to worry and that he would only be gone a second. Macedo pulled over to the curb, let Sanders out, and waited for Sanders to return. A minute later, Sanders came out of Mellor's garage riding the mountain bicycle and motioned for Macedo to follow. Macedo testified that he did not realize that Sanders planned to steal the bicycle until he saw Sanders ride out of Mellor's garage. He followed Sanders because he panicked when he discovered that Sanders had stolen the bicycle.

The jury convicted both defendants of first degree burglary. The jury convicted McKenzie as the perpetrator and Macedo as an aider and abettor to burglary.

I

Defendant Macedo, relying on *People* v. *Brady* (1987) 190 Cal.App.3d 124 [235 Cal.Rptr. 248], contends that the trial court failed to instruct the jury sua sponte that he could not be found guilty as an aider and abettor to burglary unless he knew of the perpetrator's intent to commit burglary prior to or at the time the perpetrator entered the burgled premises. We agree that the court prejudicially erred in failing to give this instruction, and Macedo's conviction must therefore be reversed.

## A

█ The crime of burglary is complete once the perpetrator enters the premises. (190 Cal.App.3d at p. 134.) To be convicted of burglary, the principal must form the intent to commit the burglary prior to or at the time of entry. An aider and abettor to burglary must also form the intent to facilitate the crime prior to or at the time of entry. (*Ibid.*) Conversely, a defendant may not be convicted as an aider and abettor to burglary if he forms the intent to aid the perpetrator *after* the premises have been burgled. (*Id.,* at p. 137.)

In *Brady,* defendant was convicted of aiding and abetting a burglary. The defense theory was that the perpetrator, Arnold, asked defendant to help him move some possessions out of his apartment because of several confrontations between the perpetrator and his roommate. (190 Cal.App.3d at pp. 129-130.) Defendant waited outside while the perpetrator retrieved several stereos from inside the apartment. Defendant helped load the stereos into a car and later traded a pocket watch for one of the stereos. In fact, neither the apartment nor the stereos belonged to Arnold, and both Arnold and defendant were prosecuted for burglary. (*Ibid.*)

The trial court in *Brady* instructed the jury on CALJIC No. 3.01, which is the standard instruction defining aiding and abetting.[1] The trial court also instructed the jury on CALJIC No. 14.50,[2] which defines the crime of

---

[1] CALJIC No. 3.01, as given in the instant case, provides: "A person aids and abets the commission of a crime when he or she, [¶] (1) with knowledge of the unlawful purpose of the perpetrator and [¶] (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, by act or advice aids, promotes, encourages or instigates the commission of the crime. [¶] A person who aids and abets the commission of a crime need not be personally present at the scene of the crime. [¶] Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting. [¶] Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting." This instruction was modified to comply with our Supreme Court's decision in *People* v. *Beeman* (1984) 35 Cal.3d 547, 560-561 [199 Cal.Rptr. 60, 674 P.2d 1318].

[2] CALJIC No. 14.50, as given in the instant case, provides: "Every person who enters any dwelling house with the specific intent to steal, take and carry away the personal property of another of any value and with the further specific intent to deprive the owner permanently of such property is guilty of the crime of burglary. [¶] It is immaterial whether the intent with which the entry was made was thereafter carried out. [¶] In order to prove the commission of the crime of burglary, each of the following elements must be proved: [¶] 1. That a person entered a dwelling house. [¶] 2. That at the time of the entry, such person had the specific intent to steal and take away someone else's property and intended to deprive the owner permanently of such property."

The comment to CALJIC No. 14.50 (5th ed. 1988) includes the following: "A person cannot be guilty of aiding and abetting a burglary unless he had knowledge, prior to the entry, that the perpetrator had the intent to steal or commit a felony. (*People* v. *Brady* [, *supra,* ] 190 C.A.3d [at pp.] 135-139 . . . .) If lack of such knowledge is raised as a defense, the court

burglary (190 Cal.App.3d at p. 135 & fn. 3), and in the language of CALJIC No. 3.31 (*id.,* at p. 137), which requires a concurrence of an act and specific intent. Defendant also unsuccessfully sought a definitional instruction to the effect that he could not be convicted of aiding and abetting a burglary unless he formed the intent to aid the perpetrator prior to or at the time of the perpetrator's entry into the premises to be burglarized. (*Id.,* at p. 135.)

The Court of Appeal concluded that CALJIC Nos. 3.01, 14.50, and 3.31 do not adequately inform the jury of the necessary elements for convicting the defendant as an aider and abettor to burglary. (190 Cal.App.3d at pp. 135, 137.) Specifically, the court noted that CALJIC No. 3.01 is "the source of the ambiguity" (*id.,* at p. 137) because it "does not inform the jury when the 'commission' of the burglary is over; it does not say at what point the putative aider and abettor must gain the knowledge of the perpetrator's unlawful purpose." (*Id.,* at p. 135.) When given with CALJIC No. 14.50, the instruction "is ambiguous precisely because it does not mesh with the burglary instruction so as to specify that the knowledgeable aid must be rendered in connection with the entry of the burglarized structure." (*Id.,* at p. 135, fn. omitted.) The court also concluded that CALJIC No. 14.50 does not cure the ambiguity because "nothing in this instruction . . . suggests that the defendant's knowledge of the *perpetrator's* intent must be gained prior to or at the time of entry." (*Id.,* at p. 137.) Finally, the court found that CALJIC No. 3.31, requiring a concurrence of act and specific intent, likewise does not resolve the ambiguity because it "[does] not inform the jury that it cannot convict defendant as an aider and abettor upon the basis of knowledge gained *after* [the perpetrator's] entry into [the victim's] apartment." (*Ibid.*)

On similar facts, the Court of Appeal in *People* v. *Forte* (1988) 204 Cal.App.3d 1317 [251 Cal.Rptr. 855] concluded that the defendant properly sought an instruction on when the defendant must form the intent to aid and abet the burglary. The court noted that the trial court has a sua sponte duty to instruct on " ' "those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.]' " (*Id.,* at p. 1323, quoting *People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913].) The court held that this sua sponte duty does not arise "in the absence of evidentiary support." (*Forte, supra,* at p. 1323.) The court found sufficient evidentiary support to warrant a sua sponte instruction on the requisite intent from the defendant's testimony that he knew of the burglary before entry but that he

must instruct sua sponte that the knowledge must be acquired prior to entry and it is reversible error not to do so. [Citation.]"

In order to guide trial judges better, a similar comment or use note should be added to CALJIC No. 3.01.

refused to participate. Even though the testimony did not "inspire confidence in Forte's denial of participation," the court concluded that the trial court had a sua sponte duty to instruct the jury on the proper intent necessary to convict defendant as an aider and abettor to burglary. (*Ibid.*) Additionally, the court found that defendant's proposed instruction was sufficient to alert the trial court to the defense theory even though it "did not precisely set forth the correct legal theory." (*Ibid.*, fn. omitted.)

Here, the trial court instructed the jury in the language of CALJIC Nos. 3.01, 3.31, and 14.50. We agree with the *Brady* and *Forte* courts that CALJIC No. 3.01 is the source of the ambiguity, particularly in light of the testimony given in this case. Macedo testified that he first realized that his companion had committed a crime when he saw him peddling the bicycle out of Mellor's garage. The jury could have inferred that this was sufficient "knowledge of the unlawful purpose of the perpetrator" (CALJIC No. 3.01 (1984 rev.)) to find Macedo liable as an aider and abettor, which by itself is insufficient to convict. Moreover, Macedo testified that he followed the cyclist down the street after he knew that a crime had been committed, apparently in an attempt to allow the cyclist to escape. From this testimony, the jury could easily infer that Macedo's actions were done with the "intent . . . of committing, encouraging, or facilitating the commission of the offense." (*Ibid.*) Thus, the jury could have properly drawn two inferences from the evidence: first, that Macedo drove the perpetrator to the crime scene and dropped him off outside the premises with the specific intent to facilitate the planned burglary; or that Macedo intended merely to assist the burglar's escape without any preentry intent or knowledge. Conviction for aiding and abetting a burglary based on the first inference is proper, but conviction is improper based solely on the second inference.

We conclude that the very language of CALJIC No. 3.01 may have caused the jury to draw improper inferences from the evidence, even when given with the instruction defining burglary (CALJIC No. 14.50). As the *Brady* court noted, neither CALJIC No. 14.50 nor CALJIC No. 3.31 resolves the ambiguity because these instructions do not "mesh" with CALJIC No. 3.01 to specify that defendant's intent must be formed prior to or at the time of the burglar's entry. (*People* v. *Brady, supra,* 190 Cal.App.3d at pp. 135, 137.)

We note that defense counsel in the present case did not request an instruction on the specific intent required to convict Macedo of aiding and abetting the burglary. Although the *Forte* court noted that defense counsel's proposed instruction alerted the trial court to the defense theory, it also concluded that defendant's testimony alone provided substantial evidence to warrant a sua sponte instruction on the requisite intent required to

convict him. (*People* v. *Forte, supra,* 204 Cal.App.3d at p. 1323.) In light of Macedo's testimony, we conclude that the evidence served to alert the trial court to the necessity of a more precise instruction concerning Macedo's intent. Under the analysis applied by the *Forte* court, the trial court should have so instructed the jury sua sponte. (*Ibid.*)

B

Conflicting or inadequate instructions on intent are closely related to instructions that completely remove the issue of intent from the jury's consideration, and, as such, they constitute federal constitutional error. (*People* v. *Lee* (1987) 43 Cal.3d 666, 672-674 [238 Cal.Rptr. 406, 738 P.2d 752].) Thus, we must determine whether the instructional ambiguity in the present case is harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].) A review of the entire record demonstrates that it is not.

The instructional error may not be found harmless for two reasons. First, the evidence presented at trial lends itself to two reasonable interpretations, and the jury's verdict, coupled with all of the instructions given, does not demonstrate that the jury rejected Macedo's claim that he held no preentry intent. For example, had the jury been instructed on the crime of accessory after the fact, we could conclude that the jury rejected Macedo's defense. Though the arguments of counsel did not serve to further confuse the issue, they did not expressly resolve the ambiguity. Neither counsel specifically and fully explained to the jury that in order to convict Macedo, it had to find he held a preentry intent.

The Attorney General argues that the jury's conviction of McKenzie demonstrates that it necessarily rejected Macedo's defense, since Macedo testified that it was Rich Sanders, not McKenzie, who perpetrated the offense. We disagree. The jury could have rejected McKenzie's identity and alibi defense without rejecting Macedo's defense. For example, the jury could have concluded that it was actually McKenzie in the van, but that Macedo did not know of the burglary until McKenzie rode the bicycle out of Mellor's garage. The jury could simply have believed that Macedo's testimony was substantially true, except that he lied to protect McKenzie's identity as the perpetrator. Thus, nothing in the record demonstrates to us beyond a reasonable doubt that the jury's conviction of McKenzie necessarily meant that it rejected Macedo's defense that he held no preentry intent.

Second, we cannot determine from the record before us upon which theory the jury convicted Macedo. (See *People* v. *Forte, supra,* 204 Cal.App.3d at p. 1324.) The jury could have inferred from the evidence that

defendant assisted his companion prior to the burglary or that he assisted him only after he rode the bicycle out of the garage. Where the reviewing court cannot determine upon which theory the jury convicted defendant and one of the theories is an improper basis for conviction, " 'it must find the error to have been prejudicial.' " (*People* v. *Green* (1980) 27 Cal.3d 1, 69 [164 Cal.Rptr. 1, 609 P.2d 468], quoting *People* v. *Robinson* (1964) 61 Cal.2d 373, 406 [38 Cal.Rptr. 890, 392 P.2d 970]; see *Green, supra,* at pp. 69-71.) This is particularly true where other evidence at trial, other properly given instructions, and the arguments of counsel do not resolve the basis upon which the jury convicted Macedo. In fact, we cannot even be certain whether all of the jurors agreed on which intent, preentry or postentry, Macedo held. (See *Green, supra,* at p. 71.) Consequently, the alternate theories upon which the jury may have convicted Macedo cannot be found harmless.

We cannot, therefore, conclude that the instructional error is harmless beyond a reasonable doubt. (*Chapman* v. *California, supra,* 386 U.S. at p. 24 [17 L.Ed.2d at pp. 710-711].) Macedo's conviction must be reversed.

## II-V*

. . . . . . . . . . . . . . . . . . . . .

The conviction of McKenzie is affirmed and the conviction of Macedo is reversed.

King, J., and Haning, J., concurred.

---

*See footnote, *ante,* page 554.